# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOHN JOSEPH DAUSNER,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,[1]

Defendant.

_______________________________________/

Case No. 1:26-cv-02183-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I. INTRODUCTION

Plaintiff John Joseph Dausner ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. FACTUAL BACKGROUND

On December 9, 2022, Plaintiff filed a claim for SSI payments, alleging he became disabled on that date due to right hip pain, left hip pain, feet and knee pain, depression, bipolar disorder, stomach pain and high blood pressure. (Administrative Record ("AR") 65, 166, 173, 190, 214, 218, 357.)

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 10.)

Plaintiff was born in 1969 and was 53 years old on the alleged disability onset date. (AR 166, 173.) He has a high school education (AR 81, 122, 358) and has no past work (AR 81, 156).

## A. Relevant Evidence of Record[3]

### 1. Medical Evidence

In February 2023, x-rays of Plaintiff's knees were negative. (AR 605–607.) An x-ray of Plaintiff's hips performed that same month showed "[r]ight gluteus medius minimus calcific tendinopathy" with no pathology of the hip joints. (AR 608.) That next month, an x-ray of Plaintiff's right hand showed a "[c]onstellation of findings most suggestive of osteoarthritis that is worst and moderate of the triscaphe joint" and "[i]irregularities of the base of the second-digit proximal phalanx and scattered cystic changes [that] could potentially represent remote erosion." (AR 599, 601.) Plaintiff's left-hand x-ray showed "[m]oderate triscaphe osteoarthritis" and "[t]iny density palmar to the scaphoid," with no acute osseous abnormality. (AR 600, 603.)

Plaintiff presented for a telehealth appointment for medication refills in August 2023. (AR 562–72.) It was noted that only a "limited physical exam [was conducted] secondary to telephone consult." (AR 565.) Plaintiff was observed to have been in no acute distress and had no difficulty speaking. (AR 565.) It was noted that Plaintiff had chronic pain in both knees, that he walks with a cane, and that he "likely" has degenerative disc disease. (AR 566.) His assessment of osteoarthritis of the knees was also documented. (AR 566.)

In November 2023, Plaintiff presented to a spine specialist complaining of pain in his neck, low back, hips, and shoulders. (AR 615.) On physical examination, Plaintiff had limited range of motion due to pain in his lumbar spine, with antalgic gait. (AR 618.) It was noted that he was using a cane. (AR 618.) The specialist noted that there is a "radicular pain to bilateral upper and lower extremities with numbness and tingling" and "myofascial pain and tenderness to cervical, thoracic and lumbar paraspinal area with palpation," which is "affecting the patient's mobility and function." (AR 618.)

Steven Stoltz, M.D., performed an internal medicine evaluation of Plaintiff in July 2024.

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

(AR 665–69.) Plaintiff presented in a wheelchair, wearing a right wrist brace, narrow left forearm brace, and had bandages wrapped on both ankles. (AR 665.) He reported a history of bilateral femur and hip fractures, which did not require surgery. (AR 665.) On examination, Dr. Stoltz noted Plaintiff was able to wheel himself around clinic and was able to mount the examination table without assistance. (AR 667.) He appeared "somewhat disheveled." (AR 667.) Plaintiff's grip strength was measured as "20/20/20" pounds on the right and "100/60/45" pounds on the left. (AR 667.) Dr. Stoltz noted no abnormalities on examination of Plaintiff's neck, head, eyes, ears, nose, and throat. (AR 667.) There was no tenderness to palpation in Plaintiff's midline or paraspinal areas of the back, range of motion was decreased to 45 degrees flexion, and extension was within normal limits. (AR 668.) On examination of the extremities, Plaintiff had unkempt feet with slight scattered hammertoes, but no pes planus, hallux valgus, or any gross bony be deformities on either of his legs, feet, or ankles. (AR 668.) Dr. Stoltz noted the range of motion of Plaintiff's shoulders was within normal limits bilaterally, as was the range of motion of Plaintiff's bilateral elbows, wrists, hips, knees, and ankles. (AR 668.) He was alert and oriented in 3 spheres, cooperative, and appropriate, with fluent speech without aphasias. (AR 668–69.) Plaintiff's cranial nerves II-XII were grossly intact, and his strength was 5/5, equal, and symmetric and both upper and lower extremities bilaterally. (AR 669.) Dr. Stoltz noted Plaintiff's sensation was grossly normal to light touch, and his reflexes were two out of four and symmetric without clonus. (AR 669.) Plaintiff was able to stand on his bare feet, but gait testing demonstrated a "shuffling gait with discomfort" and "inability to walk on his toes or heels." (AR 669.) X-rays of Plaintiff's hips and legs performed in October 2024 showed "[n]o definitive acute osseous change." (AR 672–74.)

**2. Opinion Evidence**

Following his examination, Dr. Stoltz opined that Plaintiff had no sitting limitations and could stand and walk for 10 minutes at one time without interruption and for one to two hours total in an eight-hour workday with normal breaks. (AR 669.) He could lift ten pounds occasionally but could not perform any carrying activities. (AR 670.) Dr. Stoltz noted that Plaintiff "has been provided a wheelchair, which seems reasonable in the short term while awaiting additional records and imaging studies." (AR 670.) He also opined Plaintiff should be restricted from balancing,

kneeling, crawling, or doing work on his hands and knees, though he can occasionally stoop and bend. (AR 670.) Dr. Stoltz noted that although Plaintiff "had better grip strength on the left than on the right," he opined that Plaintiff could use his hands "occasionally to frequently." (AR 670.) He further opined that Plaintiff should be restricted from climbing stairs, ramps, ladders, and scaffolding; balancing; working at unprotected heights; or operating any heavy industrial machinery that requires pedal controls. (AR 670.)

**B. Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on June 16, 2023 (AR 65, 186–95), and again on reconsideration on October 22, 2024 (AR 65, 211–18). Consequently, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (AR 221, 240–60.) At the hearing on August 29, 2025, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 122–35.) A Vocational Expert (VE) also testified at the hearing. (AR 135–40.)

**C. The ALJ's Decision**

In a decision dated September 24, 2025, the ALJ found that Plaintiff was not disabled, as defined by the Act, during a closed period from December 9, 2022, to July 27, 2024.[4] (AR 65–84.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 67–84.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 9, 2022, the application date (step one). (AR 67.) At step two, the ALJ found Plaintiff's following impairments to be severe since the application date: degenerative disc disease of the lumbar spine; right hip tendinopathy; degenerative joint disease of the bilateral hands; exostosis of bilateral feet; right inguinal hernia; chronic obstructive pulmonary disease; obesity; bipolar disorder; personality disorder; methamphetamine use disorder; and a depressive disorder. (AR 68.) The ALJ further found that, since the application date, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 68–71.)

[4] The ALJ found that Plaintiff became disabled on July 27, 2024. (*See* AR 83.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five (AR 71–81). *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that, since the application date, Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b) except [Plaintiff] can frequently push and/or pull and use hand or foot controls with the bilateral upper and lower extremities; frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; frequently handle and finger with the bilateral upper extremities; can never work in high, exposed places or in proximity to moving mechanical parts; cannot tolerate excessive exposure to atmospheric conditions such as fumes, noxious odors, dusts, mists, gases, and poor ventilation; can understand, remember, and carry out simple instructions; can have occasional interaction with supervisors, coworkers, and the public; and can deal with occasional changes in a routine work setting.

(AR 71.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not fully supported for the reasons explained in [the] decision." (AR 72.)

The ALJ determined that Plaintiff did not have any past relevant work (step four) and that, given his RFC, he could perform a significant number of jobs in the national economy (step five) prior to July 27, 2024 (the date Plaintiff's age category changed, at which point there were "no jobs that exist in significant numbers in the national economy that [Plaintiff] could perform"). (AR 81–83.) Finally, the ALJ concluded Plaintiff was not disabled prior to July 27, 2024, but became disabled on that date and has continued to be disabled through the date of the decision. (AR 83–84.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on February 5, 2026. (AR 16–21.) Therefore, the ALJ's decision became the final decision of the

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

Commissioner. 20 C.F.R. § 416.1481.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to

the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020). "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*

*v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that (1) the RFC was not supported by substantial evidence because the ALJ independently interpreted medical records without the aid of a medical expert rather than further developing the record; 2) the ALJ failed to offer a clear and convincing reason for rejecting Plaintiff's subjective symptom complaints; and (3) the ALJ erred in the consideration of the persuasiveness of consultative examining physician Dr. Stoltz's opinion. (Docs. 12, 20.) The Commissioner responds that both the RFC and the ALJ's evaluation of Plaintiff's symptoms are supported by substantial evidence, and the ALJ properly evaluated Dr. Stoltz's opinion. (Doc. 19.)

The Court agrees with Plaintiff that the ALJ did not adequately evaluate the opinion of Dr. Stoltz. Because further proceedings are required regarding the medical opinion evidence and the re-evaluation of the RFC, the Court does not reach the other allegations of error.[6]

### A. Legal Standard

An ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source" and "explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b)); *see also* 20 C.F.R. § 416.920c(b). The Social Security Administration's regulations provide that the most important factors to consider when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 416.920c(a). Supportability refers to "the extent to

---

[6] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

which a medical source supports the medical opinion by explaining the 'relevant... objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). Consistency refers to "the extent to which a medical opinion is 'consistent...with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2).

*Woods* makes clear that to reject properly a medical opinion under the substantial evidence standard, the ALJ "must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. (quoting 20 C.F.R. § 404.1520c(b)); *see also* 20 C.F.R. § 416.920c(b).

**B. Analysis**

With the foregoing legal standards in mind, the Court reviews the weight given to consultative examiner Dr. Stoltz's opinion. The ALJ determined that the opinion was "not persuasive" because

> it is not supported by his own examination findings and is not consistent with the some of the imaging studies that showed normal findings (see, e.g., Exhibits B9F; B4F, pp. 63, 61) and is not consistent with observations of other providers noting no use of a wheelchair, or with physical examinations showing an antalgic gait, but not an inability to walk (e.g., Exhibits B4F, p. 22; B5F, p. 5).

(AR 80.) The Court concludes that the ALJ's evaluation of Dr. Stoltz's opinion is deficient because the ALJ did not adequately discuss the supportability and consistency factors and failed to articulate an explanation for rejecting that opinion that is supported by substantial evidence, as explained below. *Woods*, 32 F.4th at 792 (holding that an ALJ can "reject an examining or treating doctor's opinion as unsupported or inconsistent" if the ALJ "provide[es] an explanation supported by substantial evidence"). Although "the [] regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review." *Shannon B. v. Comm'r, Soc. Sec. Admin*., Case No. 6:21-cv-01144-HL, 2023 WL 371650, at *5 (D. Or. Jan. 24, 2023) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain

evidence), and *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").)

With respect to the supportability factor, the ALJ found that Dr. Stoltz's "own examination findings" did not support the opined limitations, but the ALJ did not cite to any specific examination findings. Although, as the Commissioner points out (Doc. 19 at 8), a decision written "with less than ideal clarity" must be upheld "if the agency's path may reasonably be discerned," *Molina*, 674 F.3d at 1121, because the ALJ did not cite to any records, the Court cannot reasonably discern to what "examination findings" of Dr. Stoltz the ALJ refers and how such findings do, or do not, support Dr. Stoltz's opinion. *See Sarishamshajian v. Kijakazi*, No. 1:22-CV-00499-SKO, 2023 WL 6049883, at *6 (E.D. Cal. Sept. 15, 2023) ("[N]either the Court, nor the Acting Commissioner, may *post-hoc* comb the administrative record to find support for the ALJ's finding as to the persuasiveness of [a medical] opinion.) (internal quotations omitted). In fact, many of those findings, including reduced grip strength in the right hand, decreased range of motion in the lumbar spine, reduced reflexes, shuffling gait with discomfort, and an inability to walk on his toes or heels (AR 667–69) tend to support Dr. Stoltz's opinion that Plaintiff could stand and walk for one to two hours total in an eight-hour workday, perform no carrying, and be restricted from balancing, kneeling, crawling, climbing and operating any heavy industrial machinery that requires pedal controls (AR 669–70). Without any explanation as to how these (seemingly abnormal) examination findings do not support Dr. Stoltz's opined limitations, the Court concludes that the ALJ's supportability analysis lacks substantial evidence. *See Cantu v. Comm'r of Soc. Sec.*, No. 1:26-CV-00489-KES-EPG, 2026 WL 1747051, at *7 (E.D. Cal. June 17, 2026) ("The ALJ did not point to any specific evidence and did not do any specific comparison between that evidence that the medical opinions. Referring generally to the medical evidence does not satisfy the ALJ's duty to explain how it considered the supportability . . . factor[]."); *Schmitzer v. O'Malley*, No. 1:22-CV-1038 JLT BAM, 2024 WL 4345772, at *5 (E.D. Cal. Sept. 30, 2024) (finding error in the supportability discussion where "the ALJ did not make any findings as to what extent—if any—Dr. Pietruszka supported the limitations

identified in" the opinions and "failed to explain to what extent Dr. Pietruszka's own treatment records did not support his opinions."); *Ann M. v. Kijakazi*, No. 2:23-CV-01081-MAA, 2024 WL 39193, at *5 (C.D. Cal. Jan. 3, 2024) (finding a supportability analysis insufficient where "the ALJ did not explain why she found [the medical] opinions not supported, nor did she cite any findings in [the] treatment notes that demonstrate a lack of support").

The ALJ's evaluation of the consistency factor is equally inadequate. The ALJ found that Dr. Stoltz's opinion was not consistent with the "some of the imaging studies that showed normal findings" and "observations of other providers noting no use of a wheelchair, or with physical examinations showing an antalgic gait, but not an inability to walk," citing AR 566, 605, 607, 618, 671–74. While "some" of the imaging studies were normal, others, unmentioned by the ALJ in their discussion of the opinion, showed calcific tendinopathy in Plaintiff's hips and pelvis and moderate osteoarthritis in both of Plaintiff's hands (AR 599–603, 608), which are not inconsistent with Dr. Stoltz's limitations on, for example, carrying, kneeling, and crawling (AR 670).

The ALJ also relies on two pages from the over 780-page administrative record to find Dr. Stoltz's opinion inconsistent with "observations of other providers noting no use of a wheelchair, or with physical examinations showing an antalgic gait, but not an inability to walk," but the ALJ overlooks that one of these records was a telehealth appointment for medication refills at which a "limited physical exam [was conducted] secondary to telephone consult" and the only "observation" made of Plaintiff was that he was in no acute distress and had no difficulty speaking.[7] (AR 565.) The other page cited by the ALJ documented findings that appear to be consistent with Dr. Stoltz's opined standing, walking, lifting, and carrying limitations, including limited lumbar range of motion, radicular pain to the bilateral upper and lower extremities with numbness and tingling, and myofascial pain and tenderness to the cervical, thoracic and lumbar paraspinal areas that affects Plaintiff's "mobility and function." (AR 618.) Moreover, the ALJ does not explain how these two records that purport to show "no use of a wheelchair" or a lack of an "inability to walk" are inconsistent with limitations in the ability to lift, carry, kneel, crawl, stoop, or use pedal controls, as

[7] That telehealth note nevertheless documented Plaintiff's prior assessment of chronic pain and osteoarthritis of the knees and likely degenerative disc disease. (*See* AR 566.)

opined by Dr. Stoltz. For these reasons, the ALJ's evaluation of the consistency of Dr. Stoltz's opinion "demonstrates an attempt to cherry-pick facts and, as to those facts picked, a failure to articulate a nexus between them and the ALJ's persuasiveness analysis," which is improper. *Gonzales v. Kijakazi*, No. 1:20-CV-01530-SKO, 2022 WL 267438, at *10 (E.D. Cal. Jan. 28, 2022) (citing 42 U.S.C. § 423(d)(5)(B) (requiring an ALJ base the decision on "all the evidence available in the [record].") and *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (the court may not affirm where the ALJ "pick[ed] out a few isolated instances of improvement" to support the denial of benefits)). *See also Cruz v. Kijakazi*, No. 1:21-cv-01248-AWI-HBK, 2023 WL 1447855, at *5 (E.D. Cal. Feb. 1, 2023) ("Even under the new regulations, the ALJ may not 'cherry-pick' evidence in discounting a medical opinion."); *Buethe v. Comm'r of Soc. Sec*., No. 2:20-cv-552-KJN, 2021 WL 1966202, at *4 (E.D. Cal. May 17, 2021) (same, collecting cases).

The Court is aware of the general proposition that ALJ's are to resolve ambiguities and conflicts in the record. *Ford*, 950 F.3d at 1154. It is also mindful of the deference desired by the agency. *See* REVISIONS TO RULES, 82 Fed. Reg. 5844-01 at *5860 ("[The regulations are] essential for [the agency's] administration of a massive and complex nationwide disability program where the need for efficiency is self-evident."). However, the text of the regulations explicitly requires an explanation of how the ALJ considered the supportability and consistency of an opinion. 20 C.F.R. § 416.920c(b)(2). Harmonizing this requirement with Ninth Circuit law prohibiting cherry-picking and requiring a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinions, and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons. *See Buethe*, 2021 WL 1966202, at *7 (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must provide sufficient reasoning that allows [for] review.")). *See also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1994) (while the ALJ need not discuss all evidence presented to them, they must explain why "significant probative evidence has been rejected"). This the ALJ did not do, and the Court therefore cannot conclude that substantial evidence supports the RFC. *See Garmany v. O'Malley*, No. 1:23-CV-00607-HBK, 2024 WL 3105824, at *6 (E.D. Cal. June 24, 2024) (errors in addressing medical opinion evidence "calls

into question whether the assessed RFC . . . [is] supported by substantial evidence").

**C. Harmless Error Analysis**

The ALJ's erroneous analysis of the persuasiveness of consultative examiner Dr. Stoltz's opinion is not harmless. Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, were the ALJ to have accepted Dr. Stoltz's opinion, they could have reached an RFC determination with a lesser exertional level than previously assessed. That, as Plaintiff points out (Doc. 12 at 11, Doc. 20 at 10), together with Plaintiff's age, would have warranted a finding of disability under the Medical-Vocational Guidelines, 20 CFR, Part 404, Subpart P, Appendix 2 § 201.12 for the relevant period. *See Undra D. v. Acting Comm'r of Soc. Sec.*, No. 2:24-CV-01609-TLF, 2025 WL 2962099, at *3 (W.D. Wash. Oct. 21, 2025) ("This error was not harmless; if Dr. Budak's opinion had been properly assessed, plaintiff may have been found disabled under the Medical-Vocational Guidelines grids."). *See also David C. v. Comm'r of Soc. Sec.*, No. 23-CV-0655-WQH-MMP, 2024 WL 3596856, at *12 (S.D. Cal. July 31, 2024) (error not harmless where the Court finds the ALJ erred by failing to address adequately the supportability factor when evaluating a medical opinion); *Suzi Marie H. v. O'Malley*, No. 3:22-cv-01963-WQH-AHG, 2024 WL 965233, at *14 (S.D. Cal. Mar. 5, 2024) (determination that medical opinions were unpersuasive without providing an explanation supported by substantial evidence was "not inconsequential since it could have impacted the final RFC.").

**D. Remand for Further Proceedings**

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Notably, except in rare instances, when a court reverses an agency's determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

Here, the Court finds that remand for additional proceedings is necessary because the

persuasiveness of Dr. Stoltz's opinion must be analyzed further before a determination of disability may be made.[8] *See* 20 C.F.R. § 416.920c(c)(2); *see also Cesar C. v. Dudek*, No. 1:24-CV-03177-EFS, 2025 WL 1065959, at *10 (E.D. Wash. Apr. 9, 2025) (remanding for further proceedings where the ALJ "failed to address the supportability of [medical] opinions in any meaningful way"); *Arroyo v. Comm'r of Soc. Sec.,* No. 2:22-CV-00360-DMC, 2023 WL 3853485, at *8 (E.D. Cal. June 6, 2023) (remanding for further proceedings where the ALJ failed to explain how a physician's opinion was inconsistent with other objective medical evidence); *Buethe*, 2021 WL 1966202, at *7 (Because the ALJ cherry-picked facts and ignored probative evidence, including medical opinion evidence, "the proper remedy is remand, where the ALJ may either (a) reaffirm [their] decision after a more thorough explanation of why these opinions were unsupported by and inconsistent with the relevant evidence, or (b) award benefits."); *cf. Emily B. v. Kijakazi*, No. 4:20-CV-05174-SMJ, 2022 WL 17224299, at *6 (E.D. Wash. Sept. 14, 2022) (observing that the revised regulations rejected application of the Ninth Circuit's "credit-as-true" doctrine to medical opinions and the commentary expressly stated: "it is never appropriate under our rules to 'credit-as-true' any medical opinion").

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED. The case is REMANDED to an ALJ for further proceedings consistent with this Order. The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff John Joseph Dausner and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **September 3, 2026**

/s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE

---

[8] As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to the level of persuasiveness that should be ascribed to the medical opinion evidence. Nor does the Court express what Plaintiff's RFC ultimately should be. These are for the ALJ to decide. *Ford*, 950 F.3d at 1154.